Good morning, your honors. Kevin Nash for the appellant. Your honors, this case involves a narrow legal issue as to the scope of a guarantee for holdover rent under a series of facts that I believe established that the guarantee continued post-termination of the lease based upon the provisions of the lease itself, which included Section 18.8, which allowed payment or required payment of use and occupancy after termination of the lease when possession wasn't surrendered. The actual rent commitment or guarantee was made to Red Apple in order to induce the lease by tenants that didn't qualify for the lease themselves. These were relocation tenants. Their house was damaged. State Farm was the insurer. As part of the insurance coverage, State Farm relocated the tenants to the Red Apple building. The relocation was done by Al, and in conjunction with that relocation, I think it's not disputed at all that the tenants didn't otherwise qualify. I don't know if that's the central issue, Mr. Nash. We have to obviously interpret the language of the guarantee. The guarantee says that there's a commitment to pay for a lease term of six months, month-to-month option thereafter in accordance with the terms of the applicable leases pertaining to the three units. That's the key provision. That's the key provision. And I think it's undisputed that they paid the rent on behalf of the tenants for those apartments from November 2018, when the lease began, until November 2020, the lease is terminated. So how could they, under that language, have to continue to pay rent beyond when the lease was terminated? There's no language in the guarantee that says they will continue to pay rent if the lease is terminated, if the tenants stay, right? That is the issue, and my answer to that issue is, when the state farm agreed to pay rent in accordance with the terms of the applicable leases, that also included the post-termination holdover provisions under Article 18. And- Aren't we supposed to construe guarantees strictly under New York law? Yes, you are. And so wouldn't we look first at the guarantee language that Judge Bianco just read to determine the scope of state farms' obligation? In a sense, but in terms of the construction of it, it's a very short document. We all agree on that. And it says, but from my point of view, in accordance with the leases is the construction, and I'm asking the court to give. And in my view, in accordance with the leases means every provision under the lease, not just the termination provision, not just the other provisions, but also, most importantly here, is the holdover provisions. So, and I did cite a case actually using this- But the guarantee letter itself is very explicit about the term that is covered month to month thereafter. Right. Suggesting it's not a holdover situation, so after there's a big return notice. Well, under state- Let me ask a second question though. Was there anything that prevented Red Apple from evicting the tenants after a state farm stopped paying? Well, they certainly attempted to evict. It took about a two and a half year process. And that is some of the reasons why they asked for the guarantee to begin with. Once that tenant is in possession and they stop paying rent, at that point, they're an unauthorized holdover month to month tenant. And so the language month to month, I think, includes that post termination provision. Is it a month to month option thereafter? It doesn't say including any holdover, unauthorized holdover or anything. But it doesn't use the word specifically no doubt, but it says in accordance with the leases. And the leases have that holdover requirements. So I don't think you can read in accordance with the leases out of this. I'm not suggesting they didn't have a right to terminate. I'm not suggesting they didn't send a notice to terminate. But that notice to terminate and any release of liability, which, by the way, state farm isn't covered there, presupposes possession is given away, given back to the landlord. That never happened here. So we have a situation post termination, holdover, and you have a guarantee that says in accordance with the leases, and you have a lease that says there's an obligation to pay holdover or post termination rent. So I think that the proper read of this guarantee is to continue it until the holdover possession ends. Now, we did put in the record, state farm had another relocation tenant in the Red Apple building. They specifically said, subject to the limitations of the policy, that's the Terry family guarantee. I did that for reference to show that when state farm wants to limit its liability, they know how to do it. And in here, they left it in accordance with the leases. And by doing that, whether they take that lease in its entirety, including the holdover provisions. So I think it's essential part of my argument that you can't read termination of leases without also understanding the corresponding obligations post termination, which are set forth in the leases. And we do cite the Young case, which actually decided that case against the guarantor with the very same lease. The very same Article 18 language was in the Young case. And we did have alternatively, the landlord feels it was agreed in the truest sense, because they weren't advised that there was going to be a disclaimer of coverage. And so we inherited a situation where state farm is not fixing the house. And at the end of the day, there was no place for the Jones family to go, because the house wasn't fixed. So, and I argued in the brief, they set into motion what happened here. There would be a holdover, and rightly or wrongly, under New York State court, the way the system works, it's a very difficult thing to actually evict a tenant, residential, non-payment. And that's why we ask for the guarantee. So I do feel, I know it's an abuse of discretion, high, high bar, but I do think the fraudulent inducement claim, it was a pivotal fact that the landlord should have known that they are disclaiming coverage. Because at the end of the day, without fixing that house, they had no place to go. And so that's the way we look at it. I understand there was a lot of time that was spent in the court below. But I think you have to link the termination rights with the holdover rights, because they spring from the same document. Thank you. Thank you. We'll hear from Mr. Crack. Good morning. May it please the court. Evan Crinnick here on behalf of State Farm. It's just not commercially reasonable to read the letter in the record at appendix 100 to impose upon State Farm a commitment to pay for unlimited duration. And this really would be unlimited, because the tenant would stay in the premises if State Farm was paying the rent. The landlord would not evict the tenant if State Farm was paying the rent. Well, you could enter into that guarantee. That's what you entered into in Young, right? Well, if- In Young, there was a more expansive guarantee. Right. So I don't know that it's really up to us to say that that would be a dumb thing that State Farm would never agree to. I think the only question is, did State Farm agree to it here? In the cases cited where it's done, it's been specific in the guarantee where the guarantor, I'm not sure this is a guarantee, but says until the tenant vacates. Something as specific as that. Well, I think in Young that your opponent cited, there was some language that the guarantee covered strict performance and observance by tenant of all the agreements, provisions, and rules in the lease. So it clearly covered everything that the tenant was bound to, which by the lease includes holdover periods. Well, the New York- I mean, I don't know that it's ridiculous to say State Farm would never enter a guarantee, because it sounds like they did in Young. But I understand your argument here is that's not the guarantee we entered into here. It's not the guarantee we entered in here, but I would argue that it's commercially unreasonable to enter and to read this guarantee without that specific language to suggest that State Farm and the landlord, a sophisticated entity, are entering into that agreement. I don't think that is commercially reasonable. In the New York cases, which do strictly construe guarantees in favor of the guarantor, the ones that have imposed holdover liability all require specific statements in the guarantee to that effect. Until the tenant vacates, including holdover. This language does not appear in this letter at all. In the cases where the language does not appear in New York, appellate division authority, not civil court authority cited by my adversary, but appellate division authority, makes very clear without specific express language imposing that obligation on the landlord, it's not to be read into the lease, it has to be expressed. So I think- It seems to me, though, that State Farm's failure to disclose it was disclaiming coverage at the same time. It was offering this guarantee and bringing the tenants out to Red Apple smacks a little bit of bad faith. Well, first of all, the litigation was public record. So a landlord could have done their own due diligence to discover the fact that this litigation- Was there any basis for them to go and do that? I mean, they were helping you out in an emergency. I'm sorry? They were helping State Farm out in an emergency, it seemed to me, through Red Apple. Why wouldn't you disclose? Well, I'm not sure that we had an obligation to disclose the fact that it was a matter of public record and they could have discovered it, which suggests to me that if it was a material risk, it's something they would have sought to uncover themselves. But beyond that, it presumes that State Farm in 2018 can look into its crystal ball and say, well, we're going to enter into this lease. The litigation with the tortfeasor who caused the building to be damaged is not going to be completed by the end of our policy obligations, and our disclaimer of litigation is not going to be completed until sometime later, and if those things happen, which we don't know in 2018, they're not going to happen by 2020, then it's reasonable to assume that these tenants are going to hold over and not go find another place to live. That's a speculation on speculation on speculation. But don't you think that would have been important for the landlord to know, that there was a current disclaimer of coverage affecting the very tenants that you were asking them to take on? Well, the disclaimer is one part of it. The litigation against the tortfeasor, which is the culpable party who would have to spend the money to rebuild the house or pay the damages, that was ongoing as well. So it wasn't just our disclaimer of coverage. Whether our coverage is going to be upheld or denied is one factor that would lead the house to ultimately be rebuilt, as well as the litigation against the contractor. I think those are things that are well within a landlord's knowledge to know when they're taking a relocated tenant. I mean, they were approached by the tenant's attorney. Can you accommodate these people? It wasn't like they were unaware of the fact that there was attorneys involved in this, and you could presume litigation involved in this. Something they could have discovered by going to the computer and running a search in the New York City court system to suggest that State Farm had intended to fraud, which is the standard at that time in 2018, and not letting them know something that was public record, because they could foresee two years later that these folks are likely to hold over. It didn't stop them from renting the premises in the Terry case, the case I'd like to talk about. There, there was a 24-month limitation. They gladly rented it at Terry case. Now they're suggesting, oh, but if we had known in the Jones case that State Farm's coverage might go away, we wouldn't have rented it. I think that's implausible. Here, we paid more than 24 months. We paid more than the policy required because the state court ordered us to. So I think that is very implausible. I think Judge Rakoff saw exactly that that was not a theory that can survive a pleading motion. All right, thank you. Thank you. We'll hear from Ms. Usinger. Usinger? It's Usinger. Good morning, Your Honor. Usinger, sorry. May it please the court, Elizabeth Usinger on behalf of ALE Solutions. So there are two aspects to the district's court decision that apply to ALE Solutions. First is the motion for judgment on the pleadings, which we had made pursuant to Rule 12C. That was granted, dismissing the fraud and fraudulent inducement claims, which were the only claims that were asserted against ALE. And the second aspect of the decision was appellant's motion to amend. First, with respect for the motion to amend, it's our position that leave to amend was properly denied in this case. There was a scheduling order that was in place which governed the time in which the appellant had to amend their complaint as of right, and they wholly ignored that. And while leave to amend is generally freely granted, in circumstances where there's a scheduling order, case law in this circuit is clear that it must be balanced, that the two must be balanced. And that required the appellant to show good cause in seeking leave to amend. And there is absolutely no good cause shown here, primary consideration being due diligence. It's not disputed. The district court decided it on futility grounds, not on issues of timing. Am I wrong about that? Because it wasn't an issue of futility. Also, yes, there's also futility grounds here. And I can jump right to that. The amendment here was clearly futile because it did not address the pleading deficiencies that were pointed out in the original Rule 12C motion that my client had made. They still failed to allege that ALE had any actual knowledge of the disclaimer or the litigation that was going on. And they still continue to fail to differentiate between the appellees here, which is simply impermissible when asserting allegations of fraud. So having failed to correct those deficiencies on a proposed amendment, demonstrably the amendment would have been futile. And with respect to the original motion for judgment on the pleadings, it is our position, of course, that that was properly granted. And specifically, there was no allegation here that ALE had any guarantee of the lease. In fact, the appellant had acknowledged that the one letter at issue, the November 20, 2018 letter, was, in fact, insufficient for Red Apple to enter into the leases with the tenants. So essentially conceding that they did not rely on ALE's representations. And essentially, they have not pled any facts here to support any claim that they took any action or inaction, that they had taken any action based on the acts or omissions of ALE. And again, in the underlying complaint, the original complaint, they improperly lumped the defendants together, the appellees together, not specifying what ALE did or didn't do, or identifying any fraudulent statements, and wholly fails to meet the requirements of Rule 9b. And if the court does not have any questions, we will rest on our feet. All right. Thank you. Thank you. All right. Mr. Nash, you have two minutes in rebuttal. Yes. Thank you. I didn't see anything in your brief where you're challenging, other than maybe one sentence, the initial dismissal. You're challenging the denial of the two men, right? Yes. Yes, I am. I just want to leave the court with this thought. This was a lease arrangement arranged by State Farm and its relocation provider for temporary housing for a policyholder that lost their house due to damage. The whole context is that there's going to be temporary housing. State Farm is going to fix the house, or the house is going to be repaired, and the tenant will- That's not in the lease. No. That's not in the guarantee. No, but that's the context of it. But we're supposed to read the guarantee. We're not supposed to say, well, the guarantee probably means more than what the facts are. I guess I'm not sure why the context matters. I was going to the fraudulent inducement claim. Okay. All right. That's where I was going. Okay. On the fraudulent inducement claim, to me, the central fact to be disclosed in that context is we're disclaiming coverage, by the way. So, we might not fix the house, and we might not know when this lease is going to end. So, not on the guarantee. The guarantee, I believe, is controlled by in accordance with the leases, and in the Young case, and the comparison that the court can make with the Terry lease with a limited liability to 24 months, and that wasn't done here. So, I don't want to repeat myself. I thank you for your time, and I'll rest on my brief. All right. Thank you to everyone. We'll reserve decision. Have a good day.